109 N.J. Super. 424 (1970)
263 A.2d 498
NEW JERSEY HIGHWAY AUTHORITY, A BODY CORPORATE AND POLITIC CREATED AND EXISTING UNDER AND BY VIRTUE OF CHAPTER 16 OF THE LAWS OF 1952, AS AMENDED AND SUPPLEMENTED; FIDELITY UNION TRUST COMPANY, A BANKING CORPORATION OF THE STATE OF NEW JERSEY, AS TRUSTEE UNDER THE GENERAL BOND RESOLUTION OF THE NEW JERSEY HIGHWAY AUTHORITY ADOPTED JULY 8, 1953, AS SUPPLEMENTED; AND FIRST NATIONAL STATE BANK OF NEW JERSEY, A NATIONAL BANKING ASSOCIATION, AS TRUSTEE UNDER THE JUNIOR BOND RESOLUTION OF THE NEW JERSEY HIGHWAY AUTHORITY ADOPTED JULY 7, 1962, AS SUPPLEMENTED, PLAINTIFFS,
v.
ARTHUR J. SILLS, ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided March 25, 1970.
*425 Mr. Theodore W. Geiser for plaintiff New Jersey Highway Authority (Messrs. Pindar, McElroy, Connell, Foley & Geiser, attorneys).
Mr. Dickinson R. Debevoise for plaintiff Fidelity Union Trust Company, trustee (Messrs. Riker, Danzig, Scherer & Brown, attorneys).
Mr. John J. McDonough for plaintiff First National State Bank of New Jersey, trustee (Messrs. Darby & McDonough, attorneys).
Mr. Philip S. Carchman, Deputy Attorney General, for defendant.
*426 HERBERT, J.S.C.
This action was brought for a declaratory judgment that chapters 352 and 414 of the Laws of 1968 are unconstitutional, and for ancillary injunctive relief against their operation and enforcement. The amended complaint also contains demands for a judgment declaring that any legislation which purports to exempt classes of vehicles and persons from paying tolls on the Garden State Parkway will be unconstitutional so long as bonds heretofore issued are outstanding, and there is a demand for such other relief as the interests of justice may require. The caption names and, to some extent, describes the plaintiffs. The sole defendant is Arthur J. Sills, the Attorney General of the State of New Jersey.
Chapter 352 of the Laws of 1968 exempts properly identified members of the New Jersey National Guard from the payment of tolls on any toll road, bridge or ferry within the State used by them while going to, or returning from, any required parade, encampment, drill, meeting or active duty for training. Chapter 414 does the same thing for properly identified members of a reserve component of the armed forces of the United States. Both were passed over vetoes by the Governor. In each case, the Governor's veto message cited the unconstitutionality of the statute as the basis for his action.
Plaintiffs charge that chapters 352 and 414 are unconstitutional in that they impair the obligation of contracts, abridge the privileges or immunities of citizens of the United States, deprive persons of liberty or property without due process of law, interfere with the natural and inalienable right of acquiring, possessing and protecting property, and violate the guarantee of equal protection. Plaintiffs have moved for summary judgment on the basis of these claims.
Affidavits and documents filed by plaintiffs show that the New Jersey Highway Authority currently has outstanding bonds in the total approximate amount of $327,000,000. They were issued pursuant to resolutions authorized by *427 statute (N.J.S.A. 27:12B-8) and adopted by the Authority. The Garden State Parkway, which is a toll road throughout most of its length, was paid for in large part by using the proceeds of sale of the bonds. Tolls charged to users of the Parkway are the primary source of funds to pay the bonds, both principal and interest.
Section 9 of the New Jersey Highway Authority Act specifies the provisions which the Authority may include in any bond resolution and provides that such a resolution shall constitute a contract with the bondholders. Among the provisions which may be included are covenants as to rates of tolls and other charges to be established.
Pursuant to section 9 of the act, the Authority's general bond resolution of July 8, 1953 and its junior bond resolution of July 7, 1962 contain covenants as to the rates of tolls and other charges. For example, in the general resolution (1) section 501 pledges the tolls and other revenues of the Authority for the benefit of the bonds issued pursuant to the resolution; (2) various sections establish funds into which the revenues of the Authority are to be paid; (3) section 707 contains a covenant that the Authority has the right and power to fix, charge and collect tolls and other charges for use of the Garden State Parkway, and (4) section 711 requires the Authority to exercise its powers to fix, charge and collect tolls so that revenues in each year will meet certain specified requirements.
In addition to the provisions of the general resolution and the junior bond resolution, the act itself constitutes a contract with, and pledge to, the bondholders. Sections to be mentioned here include (1) section 5(i) of the act which gives the Authority the power to fix and revise and collect tolls, (2) section 5(j) which gives the Authority the power to establish rules and regulations for the use of the Garden State Parkway; (3) section 9 (referred to above) which specifies that such a resolution shall constitute a contract with the bondholders and that among the provisions *428 which may be included are covenants as to rates of toll and other charges to be established; (4) section 14 which specifies that the Authority is authorized to fix, revise, charge and collect tolls and charges; that such tolls and charges shall be so fixed and adjusted as to carry out and perform the terms and provisions of any contract for the benefit of bondholders, and that such tolls and charges shall not be subject to supervision or regulation by any agency of the State, (5) section 18(a) which provides that no vehicle shall be permitted to make use of the Garden State Parkway except upon payment of such tolls as may be prescribed by the Authority, and (6) section 20 which requires the Authority to permit the largest toll-free use of the Parkway consistent with its obligations to the bondholders and consistent with safe and economical construction and operation of the project on a self-supporting basis.
Considering the provisions of the New Jersey Highway Authority Act and those of the two bond resolutions of the Authority, I think that chapters 352 and 414 of the Laws of 1968 are both unconstitutional impairments of the existing contracts between the Authority and its bondholders. The Attorney General, in his answer to the amended complaint, concedes that these statutes are unconstitutional. An affidavit filed by Philip S. Carchman, the Deputy Attorney General entrusted with the handling of this case, states that in view of its opinion that the statutes in question are unconstitutional, "the Office of the Attorney General cannot defend" this action. Thus, there is no one before the court arguing for constitutionality  a condition that puts an obstacle in the path to the declaratory judgment all plaintiffs demand.
In New Jersey Turnpike Authority v. Parsons, 3 N.J. 235 (1949), where the constitutionality of the New Jersey Turnpike Authority Act was ruled upon, the Supreme Court spoke of the availability of declaratory judgments as follows:
*429 The remedy thus provided, however, is circumscribed by the salutary qualification that the jurisdiction of the courts may not be invoked in the absence of an actual controversy. "Not only must the plaintiff prove his tangible interest in obtaining a judgment, but the action must be adversary in character, that is, there must be a controversy between the plaintiff and a defendant, subject to the court's jurisdiction, having an interest in opposing his claim." Borchard, Declaratory Judgments (2d ed. 1941), p. 29; cf. New Jersey Bankers Ass'n v. Van Riper, 1 N.J. 193 (1948). We use the phrase "salutary qualification" because of the understandable policy of the courts to refrain from rendering advisory opinions, from deciding moot cases, or generally from functioning in the abstract, and "to decide only concrete contested issues conclusively affecting adversary parties in interest," Borchard, pp. 34-35.

* * * * * * * *
The first point to be considered in any proceeding for a declaratory judgment is whether or not the controversy that is presented in the briefs and at the oral argument is actual and bona fide or is merely one in which "the semblance of judicial proceedings and the form of due process are present," New Jersey Bankers Ass'n v. Van Riper, 1 N.J. 193, 198 (1948). [at 240-241]
The principles thus stated make it difficult to avoid a dismissal of the present case, or at least a stay until a contesting defendant can be joined. However, either dismissal or stay would be an unsatisfactory result in this case. Plaintiffs are faced with an actual situation in which they must do their respective duties. Though a question of constitutionality, by its very nature, suggests a certain importance, this one has so little practical significance to those purportedly benefited that the likelihood of finding anyone to take on the trouble and expense of defending actively the constitutionality of the statutes in question is very slight, if not nonexistent. Thus, there are forceful reasons for finding a way to go forward and reach a decision on the merits. I conclude that can be done, even though the importance of getting a true adversary  where one can be found  into a case of this type must be conceded.
Plaintiffs Fidelity Union Trust Company and First National State Bank of New Jersey join in this action as trustees for bondholders. It is their duty to enforce against the Highway Authority the provisions of the Authority's *430 contracts with its bondholders, and that includes enforcement of provisions relating to the collection of tolls. The trustees both face this question: Do the statutes under consideration excuse them from insisting that the Highway Authority collect regular tolls from National Guardsmen and Army Reservists and pay over for the benefit of bondholders the amounts so collected? They need instructions about their duties as trustees. To give them instructions requires a ruling on the constitutionality of chapters 352 and 414 of the Laws of 1968. Support for this approach is to be found in Trustees of Rutgers College in New Jersey v. Richman, 41 N.J. Super. 259, 283-287 (Ch. Div. 1956). If there must be a truly adversary argument on both sides of a question in order to support a declaratory judgment, that is not true as a matter of general practice about all judgments containing instructions for trustees. It is not uncommon for a trustee to sue for instructions and then, when the matter comes before the court, to have one or more of the parties present suggest a solution from which none of the other parties dissent. Being satisfied that the question is a real one, actually faced or about to be faced by the trustee, a court of equity then goes forward as a matter of usual practice to enter a judgment giving appropriate instructions, and all of this in spite of the absence of arguments pro and con the proper way to solve the problem presented. Those who might have made arguments have been before the court. Their failure to oppose a suggested solution does not put the solution out of reach.
In this case the Attorney General has had the opportunity to argue for constitutionality, and the making of such an argument would have been his duty if he had considered it appropriate to do so. That he takes the position the statutes in question are unconstitutional is also within the scope of his powers and duties. Wilentz v. Hendrickson, 133 N.J. Eq. 447, 454 et seq. (Ch. 1943), aff'd 135 N.J. Eq. 244 (E. & A. 1944). His position may not be entirely like that *431 of a trust beneficiary who chooses to agree with a suggested instruction to a trustee rather than argue against it, but at least there are marked similiarities between the two situations.
Art. IV, § VII, par. 3 of the New Jersey Constitution (1947) forbids our Legislature from passing any "law impairing the obligation of contracts * * *." Art I, § 10 of the United States Constitution provides that no state shall pass any "Law impairing the Obligation of Contracts * * *." Chapter 352 and 414 of the Laws of 1968 are unconstitutional because they violate these provisions. First National Bank of Boston v. Maine Turnpike Authority, 153 Me. 131, 136 A.2d 699 (Sup. Jud. Ct. 1957), is particularly in point because it involved a modern toll road and held unconstitutional a statute which would have had the effect, if valid, of reducing somewhat the total of revenues available for bondholders to whom those revenues had been pledged by contract.
Chapters 352 and 414 being unconstitutional, judgment will be entered instructing plaintiff trustees as well as plaintiff Highway Authority that the provisions of the Authority's bond resolutions are to be enforced and complied with as though those chapters had never been passed by the Legislature. The judgment shall include a specific order to the Highway Authority to charge tolls without regard to the terms of the two statutes so that it may perform its contract obligations to its bondholders and to their trustees and thereby do its part in responding to the enforcement instructions to the trustees which will be included in the judgment.
If the filing of this opinion attracts attention to the case on the part of anyone having a sufficient interest in the subject matter and a desire to be heard in opposition to the conclusions that have been reached, then application can be made to intervene (R. 4:33) and re-open (R. 4:50).